## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| ALEXANDRIA CARUSO, individually, and on behalf of those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>COLGATE-PALMOLIVE COMPANY, individually and as successor-in-interest to HELLO PRODUCTS LLC,<br><br>Defendant. | Case No. 1:25-cv-14440<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Alexandria Caruso ("**Plaintiff**"), individually and on behalf of all others similarly situated, brings this class action lawsuit against Defendant Colgate-Palmolive Company, individually and as successor-in-interest to Hello Products LLC ("**Defendant**"), based upon Plaintiff's personal knowledge as to herself, the investigation of her counsel, and on information and belief as to all other matters.

## INTRODUCTION

1. In the United States, most toothpaste contains an ingredient which makes the paste unsafe for children to swallow: fluoride.

2. Fluoride helps prevent cavities when applied *topically* to the teeth. When *ingested*, fluoride presents significant risks to health, particularly for young children.

3. Defendant sells kids-branded toothpastes for preschool children. These toothpastes have the same concentration of fluoride as many adult-strength brands.

4. Defendant knows that its fluoride toothpastes, including its "kids" versions, are not safe for young children to swallow. But it deceptively markets these kids' products in ways that

lead parents and caregivers to believe they are *extra* safe for children – which Defendant knows is false.

5. The Food & Drug Administration ("**FDA**") states that fluoride-containing toothpastes need to be kept "**out of reach of children under 6 years of age**," and that caregivers who purchase fluoride toothpaste for children under 6 need to supervise the child's brushing in order "**to minimize swallowing**." 21 C.F.R. § 355.50(c)(1) & (d)(1) (second emphasis added).

6. Children under two years of age have little ability to "minimize swallowing," due to poorly developed swallowing reflexes at this young age. Because of this, the FDA considers fluoride toothpaste to be generally contraindicated for children under the age of 2.[1]

7. The Centers for Disease Control and Prevention ("**CDC**") agrees that children under 2 should not use fluoride toothpaste.[2] Defendant concurs with CDC, as evident by the 2+ age notation that Defendant places on its kids' fluoride toothpastes.

8. For children who begin brushing their teeth at 2, the CDC states they should use no more than a "**smear**" of fluoride toothpaste, which is akin to a "**rice grain**" amount of paste, until they turn 3. From ages 3 to 6, the CDC states that children should use no more than a "**pea-sized**" amount of paste.[3]

9. The American Academy of Pediatrics ("**AAP**"), American Academy of Pediatric Dentistry ("**AAPD**"), and the American Dental Association ("**ADA**") all agree that children under

---

[1] FDA, *Anticaries Drug Products for Over-the-Counter Human Use; Final Monograph*, 60 Fed. Reg. 52474, 52487 (Oct. 6, 1995) ("The agency disagrees with the comments suggesting that the contraindication for children under 2 years of age is unwarranted.").

[2] Gina Thornton-Evans, et al., *Use of Toothpaste and Toothbrushing Patterns Among Children and Adolescents - United States, 2013-2016*, 68 MMWR MORB MORTAL WKLY REP. 87, 87 (2019) ("CDC recommends that children begin using fluoride toothpaste at age 2 years.").

[3] *Id*. at 87.

3 should use no more than a "smear" of fluoride toothpaste, and they further agree that children ages 3 to 6 should use no more than a "pea-sized" amount of paste.

10.    The following image from the ADA[4] shows what a "smear" (left) and "pea-sized" (right) amount of toothpaste looks like:



**Figure.** The toothbrush on the left shows a smear of toothpaste (0.1 milligram of fluoride) and the one on the right a pea-sized amount (0.25 mg of fluoride).

11.    Defendant agrees with the guidelines from the AAP, AAPD, and ADA. On its website, Colgate cites these guidelines when describing the "age-appropriate amounts of toothpaste" that children should use.[5] Colgate has admitted that caregivers of toddlers should "[u]se a smear or rice sized amount of fluoride toothpaste,"[6] and that "[i]t is recommended that

---

[4] American Dental Association Council on Scientific Affairs, *Fluoride toothpaste use for young children*, 145 J AM DENT ASSOC. 190, 191 (2014).

[5]    Colgate, *Pediatric Guidelines for Using Toothpaste in Young Children*, https://www.colgate.com/en-us/oral-health/kids-oral-care/pediatric-guidelines-for-using-toothpaste-in-young-children (last accessed Nov. 24, 2025).

[6] Colgate, *Fun Dental Activities for Children,* https://www.colgate.com/en-us/oral-health/kids-oral-care/4-fun-dental-activities-for-children (last accessed Nov. 25, 2025).

you use a 'smear' (the size of a grain of rice) of fluoride toothpaste as soon as your baby has teeth."[7]

12.     Defendant knows that it will sell less toothpaste if parents and caregivers use the safe and recommended amount of fluoride toothpaste, since this will result in very little of its product being used per brushing. Defendant has thus resorted to using marketing tactics that have been described as "misleading" and "aggressive"[8] in order to encourage kids, and their caregivers, to use far more than the safe and recommended amount of fluoride toothpaste.

13.     Defendant's use of these "misleading" and "aggressive" tactics is evident through the marketing of its purportedly health-conscious product line "Hello." Defendant's Hello-branded kids fluoride toothpaste (the "**Product**") comes in three flavors: "Magical Mermaid," "Dragon Dazzle," and "Unicorn Sparkle" (see depictions below).



[7] Colgate, *Best Toothpaste for Kids with Cavities*, https://www.colgate.com/en-us/oral-health/kids-oral-care/best-toothpaste-for-kids-with-cavities (last accessed Nov. 25, 2025).

[8] Corey H. Basch & Sonali Rajan, *Marketing strategies and warning labels on children's toothpaste*, 88 J DENT HYG. 316, 316 (2014).

4



14. One of the misleading tactics that Defendant uses to sell the Product is its use of candy and fruit flavoring ("blue raspberry," "orange dreamsicle," and "bubble gum"). It is well recognized in peer-reviewed scientific literature that presenting drugs as "candy-like" products increases the risk of overdose, particularly for young children. In 1992, the *Journal of Public Health Dentistry* published a consensus statement from U.S. dental researchers which stated, in part, "The use of flavors that may increase the ingestion of fluoridated [toothpastes] by young children **should be strongly discouraged**."[9] Many others have issued similar recommendations and warnings. See *infra* ¶¶ 81-86.

---

[9] James W. Bawden, et al. *Changing patterns of fluoride intake. Proceedings of the workshop. Part II*, 71 J PUBLIC HEALTH DENT. 1212, 1221 (1992) (emphasis added).

5

15.     The following are images from Defendant's website where it emphasizes the candy and fruit-like nature of the Product:



16.     Defendant further emphasizes the candy nature of its Unicorn Sparkle product by including an image of a literal piece of candy on the carton next to the words "tastes magical":



17.     Another misleading[10] tactic employed by Defendant is its use of a visual image of a **full strip** of toothpaste on the Product's packaging, which it shows with the words "**tastes magical works brilliantly**" (see examples below).





18.     Showing a full strip of toothpaste on the package conveys the impression that there is no need to limit how much paste goes on the brush – i.e., that anything up through a full strip is a safe and appropriate amount for a young child. In reality, a full strip of paste is **eight to ten times more** than the safe and recommended amount for a child under 3, and **three to four times more** than the safe and recommended amount for a child 3 to 6.

19.     Defendant compounds the misleading impression that the Product is safe to ingest by using silly and carefree imagery (i.e., unicorns, mermaids, and dragons) and words that are incongruent with a dangerous product that needs to be handled with caution (e.g., "tastes like

---

[10] Basch & Rajan, *supra* note 8, at 316 (stating that showing "a large swirl of toothpaste . . . directly conflicts with recommendations and warnings for how much toothpaste should be used by a child").

rainbows and sunshine," "never tested on unicorns," "slays dragon breath," "tastes magical," "no brainer").

20.     Defendant also misleads consumers by presenting the Product as a health-conscious alternative to mainstream brands, using words on the packaging that convey greater safety ("naturally friendly," "choose friendly," and "thoughtfully formulated"), and emphasizing the absence of substances that can be unhealthy to ingest ("no artificial sweeteners, no dyes, no artificial flavors, no preservatives, no parabens, no SLS/sulfates . . . no gluten, no brainer").

21.     Defendant's deceptive marketing tactics cause millions of caregivers in the U.S. to unwittingly permit and encourage their children to use far more toothpaste than is recommended or safe. Not only does this pose significant health risks for children, but it also causes economic loss to consumers by reducing the number of brushings that they receive per tube.

22.     Children who swallow too much of the Product can develop a mineralization disorder of their tooth enamel called dental fluorosis.[11] Fluorosis is a defect of tooth enamel that is marked by "increased porosity" and "less than normal amounts of calcification in the teeth."[12] This disorder causes visible, and sometimes disfiguring, staining of the enamel. See *infra* ¶¶ 40-50.

23.     Ingesting fluoride toothpaste presents other potential risks to health as well, including acute reactions such as nausea and vomiting, and chronic effects, including endocrine

---

[11] Ana Karina Mascarenhas, *Risk factors for dental fluorosis: a review of the recent literature*, 22 PEDIATR DENT. 269, 274 (2000) ("Based on the number of well-conducted case control studies, and the strength of the associations seen in the various studies, the risk of fluorosis from early use of fluoride toothpaste is no longer a controversial issue.").

[12] NATIONAL RESEARCH COUNCIL, FLUORIDE IN DRINKING WATER: A SCIENTIFIC REVIEW OF EPA'S STANDARDS 104 (2006); Crest, *Dental Fluorosis: Causes, Treatments & Prevention*, https://crest.com/en-us/oral-care-tips/tooth-enamel/dental-fluorosis-causes-treatments-prevention (last accessed Nov. 25, 2025).

disruption and neurodevelopmental disorders. See *infra* ¶¶ 51-74.

24.     Defendant's marketing tactics simultaneously violate the Federal Food Drug & Cosmetic Act ("**FDCA**"), 21 U.S.C. § 352(a), and many state consumer deception statutes, including the Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 ILCS § 505/2.

25.     Plaintiff does not seek to impose any requirement that goes beyond, is not identical to, or is different from, the requirements that are imposed on Defendant under the FDCA and its accompanying regulations, including the FDA Monograph on fluoride toothpaste.[13] *See* C.F.R. § 355.50. Plaintiff seeks instead to hold Defendant responsible for the elements of its packaging that are *not* required by the Monograph *and* which simultaneously violate its requirements under the FDCA. A judicial finding that these voluntarily added attributes are false and misleading would be harmonious and not in conflict with the FDCA.[14]

## PARTIES

26.     Plaintiff Alexandria Caruso lives in Aurora, Illinois, and at all times relevant to this case, has been a citizen and resident of Illinois.

27.     Ms. Caruso began purchasing the Product for son A.M., in 2022 just after he turned 2 years old. She continued to purchase the Product for A.M. until after he was three years old.

28.     Ms. Caruso usually purchased the Product at the Walmart stores located in Naperville and Oswego, Illinois.

---

[13] For example, Plaintiff does not seek to require Colgate to disclose that children under 3 should only use a "smear" of paste. Plaintiff also does not seek to compel Colgate to disclose that ingesting fluoride can cause dental fluorosis, disrupt the endocrine system, and impair neurodevelopment. Although Plaintiff believes such disclosures would certainly be justified and prudent, Plaintiff recognizes this Court does not have the power to order such measures.

[14] *See, e.g.*, *Bell v. Publix Super Mkts., Inc.*, 982 F.3d 468, 485 (7th Cir. 2020) ("The FDCA's preemption provision means that, while states may not require sellers to add further labeling that is not required by federal law, they may prevent sellers from voluntarily adding deceptive content that is not required by federal law.").

29. From ages 2 to 3, A.M. used a pea-sized amount of the Product on his brush for tooth brushings with Ms. Caruso's assistance and/or permission.

30. A.M. would ingest some of the toothpaste that was put into his mouth for brushing.

31. Based on the packaging of the Product, Ms. Caruso believed the product was specially formulated to be safe for young children to use and ingest in the ordinary amounts that are put on a brush.

32. Defendant Colgate-Palmolive Company is a Delaware company with its principal place of business in New York, New York. In September 2024, Defendant acquired all of the assets and liabilities of Hello Products LLC, including the Hello Kids Fluoride Toothpastes at issue in this litigation. Defendant continues to manufacture and sell Hello Kids Fluoride Toothpaste.

## JURISDICTION AND VENUE

33. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §1332(d)(2) and the Class Action Fairness Act of 2005 ("CAFA"), because (i) there are 100 or more class members; (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs; and (iii) there is minimal diversity because at least one member of the class and defendant are citizens of different states. This court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

34. This Court has personal jurisdiction over Defendant because the injuries upon which the Plaintiff's claims are based occurred or arose out of activities that Defendant specifically engaged in within the State of Illinois. Defendant knowingly and intentionally distributed its toothpaste products for sale in Illinois and Plaintiff purchased said products from retail stores located here in Illinois.

35. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a

substantial part of the events or omissions giving rise to the claims occurred in the State of Illinois, including within this District.

**ADDITIONAL FACTUAL ALLEGATIONS**

**A.    Fluoride Toothpaste Poses a Much Greater Risk to Young Children than Adults**

36.    For a multitude of reasons, young children are more vulnerable to suffering harm from fluoride toothpaste than adolescents and adults.

37.    Young children have poorly developed swallowing reflexes and, as a result, swallow a large percentage of the paste that they put into their mouth. As the FDA has explained, "Children under 6 years of age . . . have not developed control of their swallowing reflex and are not able to hold the fluoride preparation in their mouth and then expectorate properly."[15] Because of this, "ingestion of fluoride from toothpaste is common and often substantial" for young children.[16] As summarized in the *Journal of Public Health Dentistry*, "[v]irtually all authors have noted that some children could ingest more fluoride from [toothpaste] alone than is recommended as a total daily fluoride ingestion."[17]

38.    Young children are also at greater risk from fluoride toothpaste because they "cannot be expected to rationally interpret and consistently follow the instructions involving proper toothbrushing."[18] When toothpaste tastes and smells like candy, for example, young children will want to swallow it, irrespective of what the fine print on the label says. As noted by

---

[15] FDA, *Anticaries Drug Products for Over-the-Counter Use; Tentative Final Monograph; Notice of Proposed Rulemaking*, 50 Fed. Reg. 39854, 39867 (Sept. 30, 1985).

[16] Steven M. Levy, *A review of fluoride intake from fluoride dentifrice*, 60 ASDC J Dent Child. 115, 115 (1993).

[17] Steven M. Levy & Nupur Guha-Chowdhury, *Total fluoride intake and implications for dietary fluoride supplementation*, 59 J Public Health Dent. 211, 216-17 (1999).

[18] FDA, *supra* note 1, at 52487.

the CDC, children are "known to swallow toothpaste deliberately when they like its taste."[19] A recent study found that 35% of kids ate toothpaste "frequently" and an additional 22% of kids ate toothpaste "a few times."[20]

39.     Due to their smaller size, young children receive a far higher fluoride dose by bodyweight (mg/kg/day) than adults, even when ingesting the same amount of paste. A 2-year-old child of average weight (~12 kg) who ingests a single strip of toothpaste can exceed EPA's reference dose (0.08 mg/kg/day) for fluoride. According to EPA, children who ingest more than 0.08 mg/kg/day are at risk of developing "*severe* dental fluorosis."[21]

**B.      Ingesting Fluoride Toothpaste During Early Childhood Causes Dental Fluorosis**

40.     Dental fluorosis is "a permanent, mottled discoloration of the teeth"[22] that is caused by ingesting too much fluoride while the teeth are still developing. Once the teeth have finished forming, fluoride can no longer cause fluorosis. Ergo, only young children are at risk of developing this condition.

41.     The first six years of life are the critical window of vulnerability for developing dental fluorosis of the permanent teeth,[23] with fluoride exposures during the first 3 years of life being the most significant for causing fluorosis of the upper front teeth, which are the most

---

[19] CDC, *Recommendations for using fluoride to prevent and control dental caries in the United States. Centers for Disease Control and Prevention*, 50 MMWR RECOMM REP. 1, 14 (2001).

[20] Roger K. Celeste & Patricia Blaya Luz, *Independent and Additive Effects of Different Sources of Fluoride and Dental Fluorosis*, 38 PEDIATR DENT. 233, 235 Tbl 2 (2016).

[21] ENVIRONMENTAL PROTECTION AGENCY: FLUORIDE: DOSE-RESPONSE ANALYSIS FOR NON-CANCER EFFECTS 107 (2010) (emphasis added).

[22] FDA, *supra* note 1, at 52487.

[23] Fluoride causes fluorosis while the teeth are developing *prior to* eruption. Thus, a parent will not know if their child has fluorosis of the permanent teeth until *years after* the causative fluoride exposures occurred.

cosmetically important teeth.[24]

42.     Dental fluorosis comes in various degrees of severity.[25] The mild forms of fluorosis cause "permanent white lines or streaks" on the teeth, whereas the severe forms of fluorosis cause "brown, gray, or black patches and pits, typically on top of an irregular tooth surface."[26]



*Photos of Dental Fluorosis*

43.     Microscopically, "dental fluorosis is a condition of permanent hypomineralized change, with increased surface and sub-surface enamel porosity resulting from excess fluoride reaching the developing tooth prior to eruption."[27] Procter & Gamble, the maker of Crest toothpaste, describes dental fluorosis as a "hypocalcification of tooth enamel" wherein there is

---

[24] Michael R. Franzman, et al., *Fluoride dentifrice ingestion and fluorosis of the permanent incisors*, 137 J AM DENT ASSOC. 645, 646 (2006).

[25] NATIONAL RESEARCH COUNCIL, *supra* note 12, at 103-111.

[26] Colgate, *Causes of Brown Spots on the Teeth*, https://www.colgate.com/en-us/oral-health/adult-oral-care/brown-spots-on-teeth-causes (last accessed Nov. 25, 2025).

[27] Brian A. Burt, *The changing patterns of systemic fluoride intake.* 71 J DENT RES. 1228, 1228 (1992).

"less than normal amounts of calcification in the teeth."[28] In short, "fluoride affects the forming enamel by making it more porous."[29]

44.     It is well established that ingesting fluoride toothpaste can cause dental fluorosis. The American Dental Association states that "ingesting pea-sized amounts or more [of fluoride toothpaste] can lead to mild fluorosis."[30]

45.     According to a review in the journal *Pediatric Dentistry* "[b]ased on the number of well-conducted case control studies, and the strength of the associations seen in the various studies, the risk of fluorosis from early use of fluoride toothpaste is no longer a controversial issue."[31]

46.     The CDC agrees that fluoride toothpaste causes fluorosis: "Fluoride toothpaste contributes to the risk for enamel fluorosis because the swallowing reflex of children aged <6 years is not always well controlled, particularly among children aged <3 years."[32]

47.     The ingestion of fluoride toothpaste is considered to be a key reason for the skyrocketing prevalence of dental fluorosis in the US. In the 1940s, dental fluorosis was a rare condition that was generally found only in areas with elevated fluoride in water. Since that time, with the advent of water fluoridation programs and fluoridated dental products, the rate of dental fluorosis has steadily increased. The most recent national survey from the CDC, conducted in 2015-2016, found that 68.2% of children now have some form of dental fluorosis.[33]

---

[28] Crest, *Dental Fluorosis: Causes, Treatments & Prevention*, https://crest.com/en-us/oral-care-tips/tooth-enamel/dental-fluorosis-causes-treatments-prevention (last accessed Nov. 25, 2025).

[29] Mascarenhas, *supra* note 11, at 269.

[30] American Dental Association Council on Scientific Affairs, *supra* note 4, at 190.

[31] Mascarenhas, *supra* note 11, at 274.

[32] CDC, *supra* note 19, at 14.

[33] Man Hung et al., *A National Study Exploring the Association Between Fluoride Levels and Dental Fluorosis*, 6 JAMA NETW. OPEN e2318406 (2023).

48.     Dental fluorosis, even in its "mild" forms, is recognized to be cosmetically objectionable when present on a child's upper front teeth (i.e., maxillary anterior teeth).[34]

49.     Due to the objectionable appearance of fluorosis, many people with the condition pay for cosmetic treatment (e.g., abrasion of the tooth surface in mild cases, and veneers in severe cases). This treatment can be expensive and beyond the financial means for some families.

50.     It is too early to determine whether Plaintiff's child has suffered dental fluorosis as a result of his toothpaste ingestion because his permanent teeth have not yet erupted. (From age 2 onwards, it is the permanent teeth, not the baby teeth, that are at risk of fluorosis from toothpaste ingestion.)

## C.     Ingesting Fluoride Toothpaste Can Cause Stomach Flu Symptoms

51.     Ingesting too much fluoride toothpaste can cause symptoms of acute toxicity that mimic the symptoms of stomach flu, including nausea, upset stomach, and vomiting.

52.     According to a review in the *Journal of Public Health Dentistry*, "Parents or caregivers may not notice the symptoms associated with mild fluoride toxicity or may attribute them to colic or gastroenteritis, particularly if they did not see the child ingest fluoride. Similarly, because of the nonspecific nature of mild to moderate symptoms, a physician's differential diagnosis is unlikely to include fluoride toxicity without a history of fluoride ingestion."[35]

53.     The mechanism by which fluoride causes stomach flu symptoms has been described as follows: "When above normal amounts of fluoride are ingested, the fluoride combines with hydrochloric acid in the stomach and forms hydrofluoric acid. As a result, the hydrofluoric acid

---

[34] Susan O. Griffin et al., *Esthetically objectionable fluorosis attributable to water fluoridation*, 30 COMMUNITY DENT ORAL EPIDEMIOL. 199, 202-03 (2002).

[35] Jay D. Shulman & Linda M. Wells, *Acute fluoride toxicity from ingesting home-use dental products in children, birth to 6 years of age*, 57 J PUBLIC HEALTH DENT. 150, 157 (1997).

has a burning effect on the gastric lining causing gastrointestinal (GI) symptoms such as nausea, vomiting, abdominal cramping, and discomfort."[36]

54.     As with all toxicants, the dose of fluoride that causes symptoms of acute toxicity varies considerably across the population, with some children being much more vulnerable, and other children being much more resistant, than the "average child."[37]

55.     Symptoms of nausea and gastrointestinal distress have been reported at doses as low as 0.1 mg/kg.[38] A 2-year-old child of normal weight can ingest this much fluoride by swallowing as little as one full strip of fluoride toothpaste.

56.     As one pediatric dentist explained, "It does not take much toothpaste to cause a problem in a very small child. For this reason, it is extremely important to keep toothpaste out of reach of small children and behind childproofed drawers or cabinets. The symptoms that follow are nausea and vomiting that progresses to seizures and muscle spasms."[39]

57.     In *adults*, a one-time ingestion of as little as 3 milligrams in one sitting (or the equivalent of about 3 strips of fluoride toothpaste) has been found to cause "widespread" erosions of the gastric mucosa in the stomach.[40] The dose that causes erosions in the stomach of children

---

[36] Mary D. Cooper & Connie M. Kracher, *Are our patients guzzling too much fluoride?*, RDH MAGAZINE, Feb. 1, 1997, https://www.rdhmag.com/patient-care/rinses-pastes/article/16406858/are-our-patients-guzzling-too-much-fluoride.

[37] *E.g.*, H.G. Eichler, et al., *Accidental ingestion of NaF tablets by children--report of a poison control center and one case*, 20 INT J CLIN PHARMACOL THER TOXICOL. 334 (1982). *Cf.* C.J. Spak, et al., *Studies of human gastric mucosa after application of 0.42% fluoride gel*, 69 J DENT RES. 426 (1990).

[38] Kenji Akiniwa, *A Re-examination of acute toxicity of fluoride*, 30 FLUORIDE 89 (1997).

[39] Milling Pediatric Dentistry, *Help! My Child Ate Toothpaste!*, https://www.simmonsyoung.com/PediatricDentalBlog/help-my-child-ate-toothpaste/ (last accessed Nov. 25, 2025).

[40] Spak, *supra* note 37.

has not been studied (due to ethical constraints) but will almost certainly be less than 3 mg due to lower bodyweight and smaller stomach space.

58.     If a 2-year-old child ingests a full strip of Defendant's toothpaste, the National Capital Poison Center recommends that the child take "Two tablets of chewable calcium or calcium plus vitamin D supplement," "Four ounces of milk," or "One tablespoon of liquid antacid containing magnesium or aluminum" in order to help prevent "nausea, vomiting, diarrhea."[41]

**D.     1/2 of a Tube of Hello Kids Fluoride Toothpaste Has Enough Fluoride to Kill a Toddler**

59.     Fluoride is a "protoplasmic poison"[42] that can kill humans at doses not that much higher than arsenic.[43] The potency of fluoride's acute toxicity is why fluoride has been used as the active ingredient in rodenticides (to kill rodents) and insecticides (to kill bugs).[44] As far back as 1895, it was observed that "sodium fluoride is an active poison for micro-organisms of all kinds, algae, and nerves and muscles of the higher organisms."[45]

60.     The FDA instructs that "if more [fluoride toothpaste] than used for brushing is accidentally swallowed, get medical help or contact a Poison Control Center right away." 21

---

[41] *See* https://triage.webpoisoncontrol.org/(last accessed Nov. 25, 2025).

[42] Editorial, *Chronic fluorine intoxication*, 123 J AM DENT ASSOC. 150, 150 (1943).

[43] The CDC states that "[a]s little as 1–2.5 mg/kg of arsenic trioxide is a potentially fatal dose." CDC, *Medical Management Guidelines for Arsenic (As) and Inorganic Arsenic Compounds*, https://wwwn.cdc.gov/TSP/MMG/MMGDetails.aspx?mmgid=1424&toxid=3.   This   is   only slightly lower than the potentially fatal dose of fluoride (5 mg/kg), as discussed below. *See also* Floyd DeEds, *Fluorine in relation to bone and tooth development*, 33 J AM DENT ASSOC. 568, 570 (1936) ("Such a comparison of toxicity data suggests that fluorine, lead and arsenic belong to the same group, as far as ability to cause some symptom of toxicity in minute dosage is concerned.").

[44] KAJ ROHOLM, FLUORINE INTOXICATION: A CLINICAL HYGIENIC STUDY WITH A REVIEW OF THE LITERATURE AND SOME EXPERIMENTAL INVESTIGATIONS 301 (1937).

[45] Herbert B. Baldwin, *The toxic action of sodium fluoride*, 21 J AM CHEM SOC. 517, 521 (1899) (quoting Czrellitzer 1895).

C.F.R. § 355.50(c)(1).

61.     The "Probable Toxic Dose" ("**PTD**") for fluoride is 5 mg/kg.[46] The PTD "is defined as the dose of ingested fluoride that should trigger immediate therapeutic intervention and hospitalization because of the likelihood of serious toxic consequences."[47] It is the "minimum dose that could cause toxic signs and symptoms, including *death*, and that should trigger immediate therapeutic intervention and hospitalization."[48]

62.     Due to person-to-person variations in sensitivity to fluoride toxicity, not all people who ingest 5 mg/kg will experience significant toxicity. But, "if it is even suspected that 5.0 mg/kg or more of fluoride has been ingested, then it should be assumed that an emergency exists. Appropriate therapeutic measures and hospitalization should be instituted immediately."[49]

63.     A tube of Defendant's Product contains approximately 130 milligrams of fluoride. A 2-year-old child of average weight (~12 kg) will exceed the PTD if they ingest a little less than half of the Product.

64.     Each year there are between 10,000 and 15,000 calls to poison control centers as a result of excess ingestion of fluoride toothpaste.[50] The vast majority of these calls are made on behalf of very young children, and hundreds of these calls result in hospitalizations.

---

[46] Gary M. Whitford, *Fluoride in dental products: safety considerations*, 66 J DENT RES. 1056, 1056 (1987).

[47] *Id.*

[48] *Id.* at 1057 (emphasis added).

[49] *Id.*

[50] David D. Gummin et al., *2020 Annual Report of the American Association of Poison Control Centers' National Poison Data System (NPDS): 38th Annual Report*, 59 CLIN TOXICOL (Phila) 1282, 1448 (2020); David D. Gummin et al., *2021 Annual Report of the National Poison Data System© (NPDS) from America's Poison Centers: 39th Annual Report*, 60 CLIN TOXICOL (Phila) 1381, 1581 (2021).

65.     The number of poisoning incidents from consumer products reported to poison control centers is recognized to "likely underestimate the total incidence and severity of poisonings."[51] This is the case even for poisonings that cause outcomes as severe as death.[52]

66.     Consistent with the general recognition that poison control data underestimates the true extent and severity of poisonings, the number of poisonings from fluoride toothpaste is also believed to "underestimate" the true extent of fluoride poisonings due to "substantial underreporting" of such incidents.[53]

**E.      Other Health Concerns with Early Life Exposure to Fluoride**

67.     Acute toxicity and dental fluorosis are not the only health concerns with excess ingestion of fluoride.

68.     In 2006, the National Research Council ("**NRC**") of the National Academies of Science published a comprehensive review of fluoride toxicology which concluded, among other things, that excess fluoride exposure weakens bone, damages the brain, and disrupts the endocrine system, including the thyroid gland.[54] According to the NRC, fluoride has been credibly associated with impaired thyroid function in susceptible humans at doses as low as 0.01 to 0.03 mg/kg/day,[55] which is less than many children will ingest from swallowing fluoride toothpaste.[56]

---

[51] Arthur Chang, et al., *Cleaning and Disinfectant Chemical Exposures and Temporal Associations with COVID-19 — National Poison Data System, United States, January 1, 2020–March 31, 2020*, 69 MMWR MORB MORTAL WKLY REP. 16 496, 496-97 (2020).

[52] Christopher Hoyte, Medical Director of the Rocky Mountain Poison Center, Presentation to FDA Workshop "Defining 'Candy-Like' Nonprescription Drug Products," Oct. 30, 2023, p. 232.

[53] Shulman & Wells, *supra* note 35, at 157.

[54] NATIONAL RESEARCH COUNCIL, *supra* note 12, at 178-80, 220-22 & 260-66.

[55] *Id.* at 263 ("In humans, effects on thyroid function were associated with fluoride exposures of 0.05-0.13 mg/kg/day when iodine intake was adequate and 0.01-0.03 mg/kg/day when iodine intake was inadequate.").

[56] A 2 year-old child of average weight (~12 kg) will ingest 0.04 mg/kg from ingesting just half of

69.     Another endocrine effect of fluoride exposure that the NRC flagged is impaired glucose metabolism, which is believed to be caused by fluoride's "inhibition of insulin production."[57] According to the NRC, blood fluoride levels of 0.1 mg/L are credibly associated with this effect.[58] A preschool child who ingests a full strip of fluoride toothpaste will have blood fluoride levels that temporarily approximate or exceed this level.[59]

70.     In August of 2024, the National Toxicology Program ("**NTP**"), which is part of the National Institutes of Health, published a systematic review in which it concluded that excess fluoride exposure is "consistently associated with reduced IQ in children."[60]

71.     In January of 2025, NTP scientists published a meta-analysis of 74 human studies on fluoride and IQ in the journal *JAMA Pediatrics*.[61] The NTP analysis "found inverse associations and a dose-response relationship between fluoride measurements in urine and drinking water and children's IQ across the large multicountry epidemiological literature."

72.     The NTP has flagged toothpaste as a source of childhood fluoride exposure that could contribute to the risk of neurodevelopmental problems. According to the NTP, "children may be getting more fluoride than they need because they now get fluoride from many sources including treated public water, water-added foods and beverages, teas, *toothpaste*, floss, and

---

a full strip of Colgate's kids toothpaste products.

[57] *Id.* at 264.

[58] *Id.*

[59] *See* Jan Ekstrand et al., *Plasma fluoride concentrations in pre-school children after ingestion of fluoride tablets and toothpaste*, 17 CARIES RES. 379 (1983).

[60] National Toxicology Program, NTP MONOGRAPH ON THE STATE OF THE SCIENCE CONCERNING FLUORIDE EXPOSURE AND NEURODEVELOPMENT AND COGNITION: A SYSTEMATIC REVIEW. Available online at https://ntp.niehs.nih.gov/sites/default/files/2024-08/fluoride_final_508.pdf.

[61] Kyla Taylor et al*., Fluoride exposure and children's IQ scores: A systematic review and meta-analysis*, JAMA PED. doi: 10.1001/jamapediatrics.2024.5542 (published online on Jan. 6, 2025).

mouthwash, and the combined total intake of fluoride may exceed safe amounts."[62]

73.     On September 24, 2024, after hearing extensive expert testimony about NTP's findings and other recent research, the Honorable Judge Edward Chen from the U.S. District Court for the Northern District of California concluded that the addition of fluoride to drinking water "poses an unreasonable risk of reduced IQ in children." *Food & Water Watch, Inc. v. United States EPA*, No. 17-cv-02162-EMC, 2024 U.S. Dist. LEXIS 172635, at \*4 (N.D. Cal. Sep. 24, 2024).

74.     Judge Chen's detailed 80-page decision, along with the NRC and NTP reports, further highlights the need to limit children's ingestion of fluoride.

**F.     Defendant's Extensive and Longstanding Marketing Efforts Helped Shape Consumer Perceptions on the Safe and Age-Appropriate Amount of Fluoride Toothpaste for Young Children**

75.     Defendant is the second largest manufacturer of fluoride toothpaste in the U.S.

76.     Defendant engaged in extensive marketing efforts for decades, including prominent advertisements on national tv and major print media, to promote the use of fluoride toothpaste for young children. These advertisements played a key role in implanting the idea that a full strip of fluoride toothpaste is a safe and age-appropriate amount of toothpaste for young children to use.

---

[62] National Toxicology Program, *Fluoride Exposure: Neurodevelopment and Cognition*, https://ntp.niehs.nih.gov/whatwestudy/assessments/noncancer/completed/fluoride (last accessed Nov. 25, 2025).

77.     As can be seen in the images below, Defendant's national advertisements repeatedly showed full strips of toothpaste on children's toothbrushes.

 

 

78.     Prior to the 1980s, Defendant did not use candy flavors or cartoon imagery to market its toothpastes to young children. Upon information and belief, Defendant recognized that such marketing efforts would be grossly irresponsible.

79.     Beginning in the 1980s, however, Defendant abandoned its prior restraint and began adding features to its packaging to further expand its share of the children's market, including the addition of candy flavors, bright sparkling colors, and cartoon imagery.

22

80.     Dental fluorosis rates among U.S. children have risen sharply since the 1980s, and the types of marketing efforts that Colgate pioneered are believed to be one of the key reasons why.[63]

**G.      The Problem with Presenting Fluoride Toothpaste as a Candy-Like Drug**

81.     It is well recognized that presenting drugs as "candy-like" products increases the risk of overdose, particularly for young children. This problem has long been specifically flagged in the context of fluoride toothpaste.

82.     In 1992, the *Journal of Public Health Dentistry* published a consensus statement which read, in part, "The use of flavors that may increase the ingestion of fluoridated dentifrices by young children should be strongly discouraged."[64]

83.     In 1993, a consensus statement from Canadian dental researchers stated, in part: "Manufacturers should be discouraged from marketing toothpastes which, because of their taste or appeal, encourage swallowing or excessive use."[65]

84.     In 1994, the World Health Organization stated, "the production of candy-like flavours . . . should not be encouraged for use by children, as they may lead to an excessive ingestion of fluoride."[66]

85.     In 1997, the *Journal of Public Health Dentistry* published a review, which stated "The use of flavored consumer fluoride products increases the possibility that a child will ingest a

---

[63] Christopher Neurath, et al., *Dental Fluorosis Trends in US Oral Health Surveys: 1986 to 2012*, 4 JDR CLIN TRANS RES. 298, 306 (2019).

[64] Bawden, *supra* note 9, at 1221.

[65] *Introduction to the Workshop*, 22 COMMUNITY DENT ORAL EPIDEMIOL. 140, 142 (1993).

[66] WORLD HEALTH ORGANIZATION. FLUORIDES AND ORAL HEALTH 28 (1994).

toxic dose of fluoride."[67]

86.     Marketing fluoride toothpaste as if it were candy, or food, has been criticized as an "aggressive" and "misleading" marketing tactic.[68] According to Basch and Rajan, "the ubiquitous presence of food pictures and appealing flavors on the toothpaste creates a distinct conflict. While the labels warn the consumer to use only a pea-sized amount and note that toothpaste is not intended to be swallowed, many toothpastes simultaneously boast pictures of fruit with flavoring to match - a common signal to a child that toothpaste is intended to be consumed as if it were food."[69]

87.     Studies have empirically tested, and confirmed, that adding candy flavor to toothpaste increases the amount of paste that children add to their brush, as well as the amount of toothpaste that they ingest.[70]

88.     According to the FDA, marketing dangerous products to children through the use of candy or food flavoring can qualify as a "misleading" marketing tactic that renders a product "misbranded" under the FDCA.[71]

---

[67] Shulman & Wells, *supra* note 35, at 150.

[68] Basch & Rajan, *supra* note 8, at 316.

[69] *Id*.

[70] Steven M. Levy, et al., *A pilot study of preschoolers' use of regular-flavored dentifrices and those flavored for children*, 14 PEDIATR DENT. 388 (1992); Steven M. Adair, et al., *Comparison of the use of a child and an adult dentifrice by a sample of preschool children*, 19 PEDIATR DENT. 99 (1997); Claudia A. Kobayashi, et al., *Factors influencing fluoride ingestion from dentifrice by children*, 39 COMMUNITY DENT ORAL EPIDEMIOL. 426 (2011); Carrie A. Strittholt, et al., *A randomized clinical study to assess ingestion of dentifrice by children*, 75 REGUL TOXICOL PHARMACOL. 66 (2016).

[71] *E.g.*, FDA Warning Letter to Electric Lotus, LLC, Nov. 29, 2018, *available at*: https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/electric-lotus-llc-568710-11292018 (warning liquid tobacco companies that their use of candy flavoring is "misleading" and "increases the likelihood that children will ingest the product as a food").

**H.     FDCA Requirements for Fluoride Toothpaste**

*General Requirements*

89.     The FDCA prohibits companies from selling over-the-counter drugs that are "misbranded." 21 U.S.C. § 331(a).

90.     A drug is misbranded if it has packaging that "is **false or misleading** in any particular." 21 U.S.C. § 352(a)(1) (emphasis added).

91.     A drug is also misbranded if "any word, statement, or other information required . . . to appear on the label or labeling is not **prominently** placed thereon with such conspicuousness (as compared with other words, statements, designs, or devices, in the labeling) and in such terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use." 21 U.S.C. § 352(c) (emphasis added).

92.     Under the regulations issued pursuant to the FDCA, the warnings and directions on a label will fail to meet the prominence test if there is:

> (4) Insufficiency of label space for the prominent placing of such word, statement, or information, resulting from the use of label space for any word, statement, design, or device which is not required by or under authority of the act to appear on the label;
> (5) Insufficiency of label space for the prominent placing of such word, statement, or information, resulting from the use of label space to give materially greater conspicuousness to any other word, statement, or information, or to any design or device.

21 C.F.R. § 201.15(a).

*Specific Requirements*

93.     The FDA has issued a Monograph for anti-cavity dental products, including fluoride toothpaste. 21 C.F.R. § 355.1.

94.     The Monograph requires that all fluoride toothpastes comply with the general requirements set forth in the FDCA, including the prohibition on false and misleading labeling. 21

C.F.R. § 355.1 (incorporating the conditions set forth in 21 C.F.R. § 330.1, which includes FDCA's prohibition on misbranding).

95.     Further, the Monograph requires that all fluoride toothpastes provide the following warning: "Keep out of reach of children under 6 years of age. If more than used for brushing is accidentally swallowed, get medical help or contact a Poison Control Center right away." 21 C.F.R. § 355.50(c)(1). The FDA requires that the first sentence of this warning be in bold type. *Id*.

96.     The Monograph also requires that all fluoride toothpastes provide the following directions: "Adults and children 2 years of age and older: Brush teeth thoroughly, preferably after each meal or at least twice a day, or as directed by a dentist or doctor. Instruct children under 6 years of age in good brushing and rinsing habits (to minimize swallowing). Supervise children as necessary until capable of using without supervision. Children under 2 years of age: Consult a dentist or doctor." 21 C.F.R. § 355.50(d)(1)(i).

*Things that the FDA Did Not Consider and Does <u>Not</u> Require*

97.     In the proceedings that resulted in the Monograph, the FDA never considered the following marketing tactics for fluoride toothpaste:

a.      Depicting a full strip of toothpaste on the package;

b.      Boasting of candy and fruit flavors;

c.      Using playful, silly, carefree imagery and language that disarms consumers of any apprehension of potential danger or need for caution;

d.      Boasting of the absence of ingredients that can be harmful/unhealthy to ingest (e.g., preservatives, parabens, SLS, gluten, etc.);

e.      Stating that 2-year-old children should use a pea-sized amount of toothpaste.

98.     The FDA does not require any of the aforementioned marketing tactics for the

26

packaging of fluoride toothpaste.

**21      The Deceptive Attributes of Defendant's Product**

99.     Defendant's packaging of the Product conveys the false and misleading impression that the paste is age-appropriate for young children to use in quantities that far exceed the safe and recommended amount. The packaging conveys this false and misleading impression through the following elements that it has voluntarily added to the Product's packaging.

100.     First, the Product visually displays a full strip of toothpaste on the brush and does so right next to the words "tastes magical" and "works brilliantly." See *supra* pages 6-8. This marketing tactic has been specifically flagged as misleading in the peer-reviewed scientific literature. As one study noted, showing "a large swirl of toothpaste . . . directly conflicts with recommendations and warnings for how much toothpaste should be used by a child."[72] Another study noted that "the power of a visual image" of a full strip of paste can overwhelm the fine print on the back of the label and "result in children's and parents' use of toothpaste at levels higher than recommended, which may contribute to fluorosis."[73]

101.     Second, the Product boasts of candy properties, including flavors like "blue raspberry," "orange dreamsicle" and "bubble gum." See *supra* page 5. The Unicorn Sparkle product even includes a literal image of a piece of candy on the carton, next to the words "tastes magical." See *supra* page 6. Candy is something that children can safely ingest and thus the candy-like element of the Product signifies the safety of the product for children to ingest.

102.     Third, the Product uses language that suggests that it is non-toxic, including "thoughtfully formulated," "no brainer," "naturally friendly," and "choose friendly." The

---

[72] Basch & Rajan, *supra* note 8, at 318.

[73] Corey H. Basch, et al., *Advertising of toothpaste in parenting magazines*, 38 J COMMUNITY HEALTH. 911, 913 (2013).

packaging compounds this impression by emphasizing the absence of ingredients that can be harmful/unhealthy to ingest (i.e., "no artificial sweeteners, no dyes, no artificial flavors, no preservatives, no parabens, no SLS/sulfates . . . no gluten no brainer"). See *supra* pages 7-8.

103.    Fourth, the Product employs a silly, carefree, playful tone (e.g., "tastes like rainbows and sunshine," "tastes like adventure and glory," "no brainer," etc.) that is incongruent with a product that is too dangerous to be left in the presence of young children. *Id.*

104.    Fifth, Defendant adds a notation in fine print that 2-year-old children should use a "pea-sized amount" of the paste. This direction directly contradicts the professional guidelines and what Defendant itself knows to be the safe and recommended amount. As discussed above, the safe and recommended amount for children under 3 is a "smear." As shown in the following visual graphic from the American Dental Association, a smear contains 2.5 times less fluoride than a pea-sized amount:



**Figure.** The toothbrush on the left shows a smear of toothpaste (0.1 milligram of fluoride) and the one on the right a pea-sized amount (0.25 mg of fluoride).

105.    Sixth, the Product places far more prominence on puffery and promotional claims than on FDA's required warnings and directions, which it buries in fine print. This, in turn, serves to overwhelm and undermine the efficacy of FDA's required disclosures.

106.    None of the aforementioned deceptive attributes are required by the FDCA or its accompanying regulations, including the Monograph. These voluntary attributes, which Plaintiff relied upon, cause reasonable consumers (including Plaintiff) to falsely believe that the Product is age-appropriate for young children to use in quantities that far exceed the safe and recommended amount.

107.    Based on this deception, Plaintiff permitted her child to regularly use this toothpaste in quantities that, unbeknownst to her, far exceed the safe and recommended amount. She suffered economic loss as a result by obtaining fewer brushings per product.

**22      Reasonable Consumers Are Misled by Defendant's Marketing Tactics**

108.    Most parents are unaware of the recommended amount of fluoride toothpaste that young children should use and the reasons for these recommendations.[74] This increases the susceptibility of consumers to Defendant's deceptive marketing tactics as the safety, or lack thereof, of fluoride toothpaste ingestion is not within the ken of most people.

109.    The fact that Defendant placed the FDA-required warnings and directions in fine print on the back of the package does not cure the much more prominent representations on the rest of the package that run counter to, and undermine, said warnings and directions. Indeed, public health researchers have warned that "the small size and the minimally accessible placement of the warning labels" on the back of kid's fluoride toothpaste tubes "presents a problem for parents and

---

[74] Annie Y. Chen, et al., *Appropriate Fluoride Toothpaste Application: Improving Caregiver Compliance*, 40 PEDIATRIC. DENT. 412, 415-16 (2018).

guardians of young children who may miss this important information."[75]

110.     Courts have recognized that false and misleading representations on the front of a label are not cured or absolved by including correct information in the fine print on the back, even when the fine print provides all of the requisite information required by the FDA. *See, e.g.*, *Bell v. Publix Super Mkts., Inc.*, 982 F.3d 468 (7th Cir. 2020).

111.     As the Seventh Circuit explained in *Bell*, 982 F.3d at 476, "[c]onsumer-protection laws do not impose on average consumers an obligation to question the labels they see and to parse them as lawyers might for ambiguities, especially in the seconds usually spent picking a low-cost product." Under *Bell*, therefore, "plaintiffs' claims survive if they have plausibly alleged that the defendants' front labels likely lead a significant portion of reasonable consumers to falsely believe something that the back labels belie." *Id.; accord Gibson v. Perrigo Co.*, 2025 WL 2807671, 2025 U.S. Dist. LEXIS 195833 (N.D. Ill. Oct. 2, 2025) (applying *Bell* to a kids fluoride product).

## 23     Defendant's Deceptive Conduct Caused Economic Injury to Plaintiff and Class Members

112.     Defendant has engaged in the deceptive conduct described above to (i) obfuscate, distract from, and undermine FDA's required warnings and directions, (ii) induce people to buy the products who otherwise would not have done so if they had correct information; (iii) induce people to pay more for the products than they would have paid if they had correct information; and (iv) induce parents, caregivers, and children to use more of the product per brushing than recommended.

113.     Defendant was, and remains, unjustly enriched each time parents and caregivers act on their false and misleading packaging, including when caregivers use more than the safe and

---

[75] Basch & Rajan, *supra* note 8, at 318.

recommended amount of toothpaste for a young child. For example:

a.      A parent of a 2-year-old who applies a pea-sized amount (0.25 grams) of toothpaste to the brush will obtain 2.5 times *less* brushings per tube than a parent who applies the recommended smear of paste (0.1 grams).

b.      A parent of a 3-year-old who applies a full strip of paste will obtain 3 to 4 times fewer brushings per tube of paste than a parent who uses the recommended pea-sized amount of paste (0.25 grams).

114.    Adhering to the recommended amount of fluoride toothpaste is not a trivial issue given the toxic effects that can occur when a child ingests more than the recommended amount.

115.    Had Plaintiff not been misled by Defendant's packaging, she would have ensured her child used the recommended amount of paste.

116.    As an immediate, direct, and proximate result of Defendant's false and misleading representations, Plaintiff and the Class Members purchased more of the products, and/or paid more per brushing, than they would have if they had known the truth.

117.    Consequently, Plaintiff and the Class Members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.[76]

## CLASS ALLEGATIONS

118.    Pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3), Plaintiff brings this action on behalf of the following Multi-State Class: All persons in Arizona, California, Connecticut, Florida, Hawaii, Idaho, Illinois, Massachusetts, Minnesota, Missouri, New Jersey,

---

[76] Plaintiff does not seek recovery for any personal injuries that she or her child may have suffered from using the Product, including any emotional harm stemming therefrom. To be clear, this does not mean that Plaintiff's child has not suffered physical harm. This is a determination that would require an expert opinion beyond Plaintiff's ken.

New York, Virginia, Washington State, and Washington D.C., who purchased one or more of the

Product for children aged 2 to 6 years, (B) within the applicable statutes of limitation, and (C) who

used more than the recommended amount of paste.

119.     Excluded from the Class are Defendant, its parents, subsidiaries, affiliates, officers,

and directors; those who used the recommended amount of toothpaste, despite Defendant's

deceptive practices; those who purchased the Product for resale; those who make a timely election

to be excluded from the Classes, and the judge to whom the case is assigned and any immediate

family members thereof.

120.     The Class Period begins on the date established by the Court's determination of any

applicable statute of limitations, after consideration of any tolling, discovery, knowing

concealment, and accrual issues, and ending on the date of entry of judgment.

121.     Plaintiff reserves the right to amend the definition of the Class if discovery or

further investigation reveals that the Class should be expanded or otherwise modified.

122.     **Numerosity**: The members of the Class are so numerous that joinder of all class

members is impracticable. On information and belief, there are, at a minimum, hundreds of

thousands of Class Members. Class Members may be notified of the pendency of this action by

recognized, Court-approved notice dissemination methods, which may include U.S. mail,

electronic mail, Internet postings, and/or published notice.

123.     **Predominance of Common Questions of Law and Fact**: Questions of law and

fact that are common to the members of the Class predominate over questions that are specific to

individual members. These common questions of law and fact include, but are not limited to, the

following:

           a.     Whether the FDCA preempts claims that the voluntarily added components of

the Product's packaging and labeling are false and/or misleading;

b.   Whether the attributes of the Product that are not required by the FDA Monograph are false and/or misleading;

c.   Whether Defendant knew or should have known that the packaging of the Product is false and/or misleading;

d.   Whether Defendant has violated the state consumer protection statutes alleged herein;

e.   Whether Defendant was unjustly enriched;

f.   Whether Plaintiff and Class members have suffered an ascertainable loss of monies or property or other value as a result of Defendant's deceptive and unlawful conduct; and

g.   Whether Plaintiff and Class members are entitled to relief and, if so, the nature of such relief.

124.   The consumer protection laws in the putative Multi-State Class are materially identical with respect to the causes of action for deceptive trade practices alleged herein. Thus, the same deceptive conduct by Defendant that violates Illinois's Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505, *et seq*., simultaneously violates the consumer protection laws of the other identified states.

125.   **Typicality**: Plaintiff's claims are typical of those of other Class Members because, like all members of the Class, Plaintiff purchased the Product with the false and misleading packaging for children aged 2 to 6 years old, used more of the toothpaste than is safe and recommended, and sustained economic loss as a result.

126.   **Adequacy**: Plaintiff will fairly and adequately protect the interests of the Class and

33

have retained counsel that is experienced in litigating complex class actions. Plaintiff has no interests which conflict with those of the Class. Plaintiff and counsel are aware of their fiduciary responsibilities to the Class members and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for Class members.

127.  **Superiority**: A class action is superior to any other available means for the fair and efficient adjudication of this controversy for the following reasons:

    a.  The economic loss suffered by each individual member of the Class do not justify the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct;

    b.  Even if individual members of the Class had the resources to pursue individual litigation, it would pose a crushing burden on the court system for these cases to be litigated on an individual basis;

    c.  Absent a class action mechanism, Plaintiff and Class members will continue to suffer harm as a result of Defendant's unlawful conduct because individual litigation is wholly impractical and cost prohibitive; and

    d.  This action presents no difficulty that would impede its management by the Court as a class action.[77]

---

[77] Each claimant's eligibility for relief can be determined through self-identifying affidavits, a mechanism that courts have widely endorsed in cases, such as the one at bar, involving low-priced consumer goods. *See, e.g., Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1030 (7th Cir. 2018); *Mullins v. Direct Dig., Ltd. Liab. Co*., 795 F.3d 654, 658 (7th Cir. 2015); *Langan v. Johnson & Johnson Consumer Cos*., 897 F.3d 88 (2d Cir. 2018); *Benson v. Newell Brands, Inc*., No. 19 C 6836, 2021 U.S. Dist. LEXIS 220986, at *30-32 (N.D. Ill. Nov. 16, 2021); *Hasemann v. Gerber Prods. Co*., No. 15-CV-2995 (MKB) (RER), 2019 U.S. Dist. LEXIS 28770, at *53-54 (E.D.N.Y. Feb. 20, 2019); *Suchanek v. Sturm Foods, Inc*., 311 F.R.D. 239, 259-60 (S.D. Ill. 2015); *Brown v. Hain Celestial Grp., Inc.*, No. C 11-03082 LB, 2014 U.S. Dist. LEXIS 162038, at *29-30 (N.D. Cal. Nov. 18, 2014); *Cf. Pella Corp. v. Saltzman*, 606 F.3d 391, 396 (7th Cir. 2010) ("Under Rule 23, district courts are permitted to 'devise imaginative solutions to problems created by the

## FIRST CAUSE OF ACTION
### Deceptive Acts and Practices in Violation of the
### Illinois Consumer Fraud and Deceptive Trade Practices Act
### 815 ILCS 505/1, et seq.

128.    Plaintiff incorporates the preceding paragraphs as if fully written herein.

129.    Plaintiff brings this claim individually and on behalf of the Illinois members of the

Multi-State Class.

130.    Plaintiff and other Class members are persons within the context of the Illinois

Consumer Fraud and Deceptive Trade Practices Act ("**ICFA**"), 815 ILCS § 505/1(c).

131.    Defendant is a person within the context of the ICFA, 815 ILCS § 505/1(c).

132.    At all times relevant hereto, Defendant was engaged in trade or commerce as

defined under the ICFA, 815 ILCS § 505/1(f).

133.    Plaintiff and Class members are "consumers" who purchased the Product for

personal, family, or household use within the meaning of the ICFA, 815 ILCS § 505/1(e).

134.    The Illinois Consumer Fraud and Deceptive Trade Practices Act ("**ICFA**")

prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices," which

includes "the use or employment of any . . . false pretense, false promise, misrepresentation, or the

concealment, suppression or omission of any material fact." 815 ILCS 505/2.

135.    A "claim for 'deceptive' business practices under the [ICFA] does not require proof

of intent to deceive." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 575 (7th Cir. 2012) (citation

omitted). The defendant, however, must intend for consumers to rely on the aspects of the labeling

that are alleged to be deceptive.

136.    As with other sophisticated corporate entities, Defendant intentionally designs the

---

presence in a class action litigation of individual damages issues.'").

35

packaging and labeling of the Product, including the false and deceptive elements described in paragraphs 100 to 105 to entice the target audience to purchase the Product.

137.    As described above, the attributes that the Defendant has voluntarily added to the Product's packaging (*see* paragraphs 100 to 105) deceive consumers into believing that the Product is age-appropriate for young children to use in quantities that far exceed the safe and recommended amount. This deception includes, but is not limited to, a visual representation of a full strip of toothpaste (which is up to 10-times more than the safe and recommended amount), and an express representation in the fine print that 2-year-old children should use a pea-sized amount (despite being 2.5-times more than the safe and recommended amount).

138.    Defendant intends for consumers to rely on these deceptive attributes, whether or not it knows these attributes are false and/or misleading.

139.    Reasonable consumers rely and act upon said deceptive attributes.

140.    Plaintiff relied on Defendant's deceptive packaging and suffered economic loss as a proximate result of this reliance.

141.    Through said violations of the ICFA, Defendant has been unjustly enriched, and continue to be unjustly enriched, by unfairly obtaining money from members of the Class.

142.    Based on Defendant's deceptive acts and practices, Plaintiff and the Illinois Class members are entitled to relief under 815 ILCS §505/10a.

**SECOND CAUSE OF ACTION**
**Deceptive Business Practices in Violation of**
**Other Similar State Statutes Identified Herein**

143.    Plaintiff incorporates the preceding paragraphs as if fully written herein.

144.    Plaintiff brings this claim on behalf of Arizona, California, Connecticut, Florida, Hawaii, Idaho, Massachusetts, Minnesota, Missouri, New Jersey, New York, Virginia,

Washington State, and Washington D.C. members of the proposed Multi-State Consumer Deception Statute Class.

145.    As described above, including but not limited to paragraphs 100 to 105, Defendant has engaged in deceptive practices in its marketing of the Product. Through these deceptive practices, Defendant conveyed the false and misleading impression that the Product is age-appropriate for young children to use in quantities that far exceed the safe and recommended amount.

146.    Through this deceptive conduct, which violated, and continues to violate, the ICFA (815 ILCS 505/2), Defendant has simultaneously violated, and continue to violate, the following state consumer protection statutes:

    a.    Arizona (A.R.S. § 44-1521, *et seq*.);

    b.    California (Cal. Bus. & Prof. Code § 17200, *et seq*., Cal. Bus. & Prof Code § 17500, *et seq*., & Cal. Civ. Code § 1750, *et seq*.)

    c.    Connecticut (Conn. Gen. Stat. § 42-110a, *et seq*.);

    d.    Florida (Fla. Stat. § 501.201, *et seq*.);

    e.    Hawaii (HRS § 481A-1, *et seq*.);

    f.    Idaho (Idaho Code § 48-601, *et seq*.);

    g.    Massachusetts (Mass. Gen. Laws 93A);

    h.    Minnesota (Minn. Stat. § 325F.68, *et seq*.);

    i.    Missouri (Mo. Rev. Stat. § 407.005, *et seq*.);

    j.    New Jersey (N.J.S.A.§ 56:8-1, *et seq*.);

    k.    New York (NY GBL §§ 349-50);

    l.    Virginia (Va. Code Ann. § 59.1-196, *et seq*.);

m.   Washington (Wash. Rev. Code § 19.86.010, *et seq*.);

n.   Washington D.C. (D.C. Code § 28-3904, *et seq*.)

147.   Plaintiff and the Class Members have permitted their preschool children to use more toothpaste than safe or recommended based on their reasonable reliance on Defendant's false and misleading packaging.

148.   Defendant intends for consumers to rely on the deceptive attributes of the Product's packaging, whether or not it knows these attributes are false and/or misleading.

149.   Reasonable consumers rely and act upon said false and misleading representations.

150.   Plaintiff relied on Defendant's deceptive packaging and suffered economic loss as a proximate result of this reliance.

151.   Through said violations of the ICFA, Defendant has been unjustly enriched, and continues to be unjustly enriched, by unfairly obtaining money from members of the Class.

152.   Based on Defendant's deceptive acts and practices, Plaintiff and the Illinois Class members are entitled to relief under 815 ILCS §505/10a.

153.   Plaintiff and the Class Members have suffered economic harm as a proximate result of Defendant's violations of the aforementioned statutes by using more of the Product per brushing than is safe or recommended, and thereby obtaining less brushings per tube of toothpaste.

154.   Through its deceptive acts and practices, Defendant has been unjustly enriched, and continue to be unjustly enriched, by unfairly obtaining money from members of the Class.

155.   Based on Defendant's deceptive acts and practices, Plaintiff and the Class members are entitled to relief under the aforementioned state statutes.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of themselves and those similarly situated, respectfully request that the Court enter judgment against Defendant as follows:

A.    Certification of the proposed Class, including appointment of Plaintiff's counsel as Class counsel and Plaintiff as Class Representative;

B.    An award of compensatory damages in an amount to be determined at trial;

C.    An award of restitution in an amount to be determined at trial;

D.    An award of disgorgement in an amount to be determined at trial, except as to those causes of action where statutory damages are not available by law;

E.    An award of statutory damages in an amount to be determined at trial, except as to those causes of action where statutory damages are not available by law;

F.    An award of treble damages, except as to those causes of action where treble damages are not available by law;

G.    An award of punitive damages in an amount to be determined at trial, except as to those causes of action where punitive damages are not available by law;

H.    An order requiring Defendant to pay both pre- and post-judgment interest on any amounts awarded;

I.    For reasonable attorneys' fees and the costs of suit incurred; and

J.    For such further relief, including injunctive relief, as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all Counts and as to all issues.

Dated: November 25, 2025

Respectfully Submitted,

By: */s/ Michael Connett*
Michael Connett
**SIRI & GLIMSTAD LLP**
700 S. Flower St., Suite 1000
Los Angeles, CA 90017
mconnett@sirillp.com
Tel: (888) 747-4529

Aaron Siri*
Elizabeth A. Brehm*
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, NY 10151
aaron@sirillp.com
ebrehm@sirillp.com
Tel: (888) 747-4529

*Attorneys for Plaintiff*
*and Putative Class*

**pro hac vice* to be sought